## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | Criminal No. 25-041 (SCC) |
| **KELVIN GARCIA-OQUENDO,** | |
| Defendant. | |

## ORDER ON MOTION FOR RELEASE

A grand jury sitting in this district has returned an indictment against Defendant Kelvin Garcia-Oquendo ("Garcia-Oquendo") consisting of eight counts. (Docket No. 3). Counts one through four charge separate instances of bank fraud in violation of 18 U.S.C. § 1344. (*Id.*) Counts five through eight charge four separate instances of aggravated identity theft in violation of 18 U.S.C. § 1028A. (*Id.*) Garcia-Oquendo appeared before me on March 6, 2025, for initial appearance and arraignment. (Docket No. 12). He pleaded not guilty to the charges in the indictment. (*Id.*)

Garcia-Oquendo has filed a "Motion for Release with Conditions". (Docket No. 15).[1] In it, Garcia-Oquendo moves for immediate release arguing that a detention hearing is not authorized in this case because the Government has not met its burden to show serious risk of flight under 18 U.S.C. § 3142(f)(2)(A). Even if the Government established serious risk of flight, Garcia-Oquendo insists that immediate release is warranted because

---

[1] Courtesy copies of this motion were provided to the Court and to the Government because the motion had not yet been filed in the docket at the time of the initial appearance.

there are conditions that can be imposed that will reasonably assure his appearance to the proceedings and the safety of the community.

For its part, the Government maintains that it has proven by a preponderance of the evidence that Garcia-Oquendo is a serious risk of flight. The United States moves for pretrial detention proffering evidence pursuant to the factors set forth in section 3412(g) that in its view demonstrates that there is no combination of conditions that would mitigate the risk of nonappearance that exists in this case or reasonably assure the safety of the community.

After careful consideration, and for the reasons set forth below, Garcia-Oquendo's motion for release is DENIED.

## I.    BACKGROUND

The present case is not Mr. Garcia-Oquendo's first rodeo. In 2013 and 2015, respectively, he faced charges of a similar nature in this district. Specifically, in Criminal No. 13-299 (ADC), Garcia-Oquendo pleaded guilty to conspiracy to commit bank fraud and aggravated identity theft, the same charges that he again faces under the indictment in this case. It should be noted that while originally released on conditions in that case, Garcia-Oquendo's bail was subsequently revoked for engaging in the criminal conduct that formed the basis of the charges brought against him in Criminal No. 15-524 (ADC). In the latter case, Garcia-Oquendo pleaded guilty to unauthorized use and transfer of access devices in violation of 18 U.S.C. § 1029. Defendant was sentenced for both cases to a total term of imprisonment of 89 months to be followed by a total term of supervised release of five years. (*See* Criminal No. 13-299 (ADC), Docket No. 1396 and Criminal No. 15-524 (ADC), Docket No. 15).

2

Garcia-Oquendo was released from the imprisonment portion of his sentence in May of 2022 and began serving his term of supervised release. On August 22, 2023, the probation officer in charge of Garcia-Oquendo's supervision filed a motion notifying violations to the conditions of supervised release. (Criminal No. 13-299 (ADC), Docket No. 1710 and Criminal No. 15-524 (ADC), Docket No. 27). These motions alleged in sum and substance that Garcia-Oquendo engaged in new criminal conduct constituting aggravated identity theft, bank and wire fraud. (*Id.*).[2] Garcia-Oquendo was ordered detained pending the revocation proceedings.

Eventually, following a fully contested hearing, the Court revoked Garcia-Oquendo's supervised release term and imposed on him to a total sentence of 21 months of imprisonment to be followed by a one-year term of supervised release. (Criminal No. 13-299 (ADC), Docket Nos. 1752 and 1753 and Criminal No. 15-524 (ADC), Docket Nos. 67, 68).[3] The record reflects that Garcia-Oquendo completed the term of imprisonment on the revocation on February 16, 2025.

At the initial appearance held before me on March 6 and after listening to extensive argument by the parties, I took the matter of release or detention under advisement. I now issue this written order to outline my findings and analysis.

## II.   LEGAL FRAMEWORK

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct.

---

2 There is no dispute that the conduct alleged in the revocation proceedings relates, at least in part, to the charges that have been filed against Garcia-Oquendo in the instant case.
3 Garcia-Oquendo appealed from the revocation judgments and the First Circuit has yet to issue a decision on the matter. *See* Consolidated Appeal Nos. 24-1665 and 24-1666. According to the docket of these cases, the Court of Appeals held oral argument on February 6, 2025.

2095, 95 L. Ed. 2d 697 (1987). The Bail Reform Act thus authorizes pretrial detention in very limited circumstances. *See* 18 U.S.C. §§ 3142(e)-(g).

The Government must first show that a detention hearing is authorized because the case involves one of the five categories of serious offenses listed in § 3142(f)(1), the defendant presents a serious risk of flight under § 3142(f)(2)(A), or there is a serious risk that the defendant will obstruct justice under § 3142(f)(2)(B). Further, it is well-settled that where "detention is based on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in § 3142(f)(1)." *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988). In other words, the government cannot move for a detention hearing on a stand-alone argument that the defendant represents a danger to the community. *See United States v. Twine*, 344 F.3d 987 (9th Cir. 2003) ("We are not persuaded that the Bail Reform Act authorizes pretrial detention without bail based solely on a finding of dangerousness. This interpretation of the Act would render meaningless 18 U.S.C. § 3142(f)(1) and (2)."). But once there is a basis to hold a detention hearing, the court is required to consider if any conditions of release would reasonably assure the safety of the community and the appearance of the defendant and cannot turn a blind eye to facts establishing dangerousness. *United States v. Castellanos-Almendares*, ___ F. Supp. 3d ___, 2019 WL 3937862, 2019 U.S. Dist. LEXIS 141261, at *7 (S.D. Fla. Aug 20, 2019).

If the Government establishes that a detention hearing is authorized, then it must prove that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e); *see also United States v. Villatoro-Ventura*, 330 F.

4

Supp. 3d 1118, 1125 (N.D. Iowa 2018). This analysis is informed by the following factors: the nature and circumstances of the offense, the weight of the evidence against the defendant, the defendant's history and characteristics, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

## III.  DISCUSSION

Defendant contends that he must be immediate released because the Government failed to show that any of the provisions of § 3142(f) apply. Garcia-Oquendo specifically argues that the Government cannot meet its burden to show that he poses a serious risk of flight under subsection of 3142(f)(2)(A). He proffers that he has strong family ties and ties to our district as well as no connection to foreign countries. Garcia-Oquendo also mentioned that through the support of his family, he will have a place to live and offered either his sister Janitza or his mother Margarita as potential third-party custodians. Garcia-Oquendo emphasizes that while he has a prior criminal history, there are no failures to appear in his record. Defendant also posits that empirical evidence undermines the Government's argument for detention because statistics show that released defendants reoffend or flee in a small percentage of cases. Lastly, Garcia-Oquendo maintains that even if he is found to be a serious risk of flight, the conditions that he proposes are sufficient to reasonably assure his appearance and the safety of the community.

The Government ripostes that Garcia-Oquendo represents a serious risk of flight given his track record of noncompliance with the orders of the court as well as his engaging in criminal conduct while on bail and supervised release. Garcia-Oquendo has

a proclivity to steal the identities of other persons, the Government says, which allows him to steal money from individuals and financial institutions. He has done this in the past by means of electronic devices which he could easily have access to while on bail. The Government also asserted that the principal address and third-party custodian offered by the defense is not an option because Garcia-Oquendo's sister and her husband are being investigated for possible involvement in the alleged fraudulent scheme. The Government also claims that the weight of the evidence and the sentencing exposure with respect to the new charges is a significant incentive for Garcia-Oquendo to seek to willfully flee the jurisdiction or abscond within the jurisdiction. Finally, addressing the 3142(g) factors, the Government highlights that the history and characteristics of the defendant as well as the nature and seriousness of the economic danger that he represents, clearly demonstrate that there are no conditions that will reasonably assure his appearance to the proceedings or the safety of the community.

### A. Eligibility for Detention

As noted, the Government invokes section 3142(f)(2)(A)—serious risk of flight—as the basis for pretrial detention. The Government has the burden to establish serious risk of flight by a preponderance of the evidence. *See United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991). However, the government does not have to demonstrate that it is more likely than not that the defendant will flee, only that that it is more likely than not that there is a serious risk that he will flee. *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138 (D. Idaho 2023). Serious risk of flight has been defined by some courts as more than mere ordinary risk and is certainly different than risk of non-appearance. It requires intentional and active movement outside the jurisdiction or within the

6

jurisdiction to avoid appearing in court. The *Figueroa-Alvarez* court summarized the definition as "a great risk—beyond average—that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision. *Id.*; *see also United States v. White*, No. 3:21-mj-04070, 2021 WL 21554441, 2021 U.S. Dist. LEXIS 100544, at *27-29 (M.D. Tenn. May 27, 2021).

Here, I conclude that the Government has shown by a preponderance of the evidence that detention is authorized because Garcia-Oquendo poses a serious risk of flight, that is, risk of flight beyond average. Garcia-Oquendo has been charged by the Grand Jury with four counts of bank fraud and four counts of aggravated identity theft. *See United States v. Campos*, No. 2:23-mj-00138-KFW, 2023 U.S. Dist. LEXIS 104773, at *2-3 (D. Me. June 15, 2023) (in determining serious risk of flight, the court considered, among other facts, that defendant was charged with fraud and deceit and impersonated another person to obtain funds.). The conduct alleged occurred while he was serving a supervised release term for charges related to bank fraud, identity theft, and credit card fraud. The evidence proffered by the Government included the allegation that while still serving the back end of his sentence, at the halfway house, Garcia-Oquendo quickly resumed his illegal activities.

His prior criminal conduct, which began almost two decades ago (in 2008), as well as the current charges, involve assuming the identity of other persons to steal money from them or from financial institutions. The record demonstrates that Garcia-Oquendo has perpetrated these crimes through the use of technology and electronic devices with access to the internet. This shows a likelihood that he has the means, including the ability to secure the financial resources, to facilitate flight by impersonating others through fraud

7

and deceit. I also take into consideration that the defendant has repeatedly failed to obey the orders of the Court. He has twice engaged in new criminal conduct while under conditions of release. *See United States v. Tome-Rojas*, No. CR14-4015-MWB, 2014 U.S. Dist. LEXIS 27072, at *6 (N.D. Iowa Mar. 4, 2014) (finding serious risk of flight in the case of a defendant that engaged in criminal conduct while on bond for very similar conduct). The conditions imposed by the Court on him in the past have not served as deterrent. And the conditions offered by the defense to mitigate any risk of flight do not appear to be adequate. For example, one of the third-party custodians offered in Garcia-Oquendo's motion, his sister Janitza, the Government has proffered may be connected to the offense. It is likewise concerning that through fraud, he has access to financial resources that would allow him to willfully leave the jurisdiction or abscond to avoid the present prosecution for which he faces increased punishment, including a consecutive two-year sentence that must be added to any other sentence. See *United States v. Gallardo-Alvarez*, No. Crim No. 22-120 (SCC), 2022 WL 2339421, 2022 U.S. Dist. LEXIS 115487, at *4-5 (D.P.R. June 27, 2022) (Carreño-Coll, J.) (agreeing that potential lengthy incarceration period, financial means to flee, and disrespect for the law pointed to the defendant posing a serious risk of flight.).

For these reasons, I find that the Government met its burden to establish serious risk of flight, and, hence, that a detention hearing was warranted under the Bail Reform Act.

## B. Section 3142(g) Analysis

### 1. Nature and Circumstances of the Offense

Again, Garcia-Oquendo is charged with bank fraud and aggravated identity theft.

8

At the detention hearing, the Government proffered that the defendant engaged in a scheme to defraud 11 banks and 13 individual victims, including elderly persons. If convicted, this would be Garcia-Oquendo's second federal conviction for the same type of offense.

### 2.    Weight of the Evidence.

Given the presumption of innocence that protects defendants, and the fact that the role of judicial officers presiding over bail matters is not to determine guilt, courts have declared that the weight of the evidence is the least important of the various factors. *See United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). Notwithstanding, "a preliminary assessment of the strength or the weakness of the evidence can be a key consideration in whether the defendant is dangerous or poses a flight risk, and such a finding does not in fact impinge upon the presumption of innocence." *United States v. Zhe Zhang*, 55 F.4th 141, 152 (2d Cir. 2022).

The weight of the evidence against Garcia-Oquendo, as proffered by the Government, appears to be strong. And while it is not my role to pass judgment on potential guilt, I can certainly take the strength of the government's evidence against him into consideration in determining that the Defendant has an incentive to flee or that he poses a risk to the safety of the community.

### 3.    The History and Characteristics of the Accused

Under this factor, the Court can consider:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the
> person was on probation, on parole, or on other release
> pending trial, sentencing, appeal, or completion of sentence
> for an offense under Federal, State, or local law[.]

18 U.S.C. § 3142(g)(3). This factor weighs heavily against release. Garcia-Oquendo has

family ties to the community and has been a life-long resident of Puerto Rico. Also, there

is no evidence that he has failed to appear in court in previous proceedings. Those facts

would favor release. On the other hand, his character, which evinces a pattern of stealing

from vulnerable victims, his past conduct, including the commission of new offenses

while under release conditions, the nature and extent of his criminal history, and his

history of drug use, all militate against release. Of grave concern is that while on bail for

his first federal case, Garcia-Oquendo picked up a second case involving credit card fraud.

And the Government proffered that very shortly after his release from prison in the

previous case, and while still at the residential reentry program phase of his firs federal

sentence, defendant became active once again in his fraudulent activities.

### 4. Danger to the Community

The case law supports the notion that danger to the community as contemplated

by the Bail Reform Act goes beyond "mere danger of physical violence"[;] [s]afety of the

community refers to the danger that the defendant might engage in criminal activity to

the detriment of the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir.

1989). And such danger includes economic harm. *See United States v. Reynolds*, 956 F.2d

192 (9th Cir. 1992); *see also United States v. Madoff*, 586 F. Supp. 2d 240, 253 and n.11

(S.D.N.Y.) (noting that "in certain circumstances an economic or pecuniary harm may

give rise to a consideration of danger" and that "[t]he question appears to become one of

10

propensity to commit further crimes, even if the resulting harm is solely economic.").

The financial and economic danger to the community is significant here. In addition to the serious allegations in the indictment of an extensive fraudulent scheme in which financial institutions and individuals were the victims, Garcia-Oquendo has engaged in the conduct while under conditions of supervised release. *See United States v. Shareef*, 907 F. Supp. 1481, 1486 (D. Kan. 1995) (finding that evidence of danger to the community was significant given that defendant continued to engage in fraudulent activity while on bond.); *United States v. Giordano*, 370 F. Supp. 2d 1256, 1270 ("There can be no question that an economic danger, like that posed by a serious defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act."). In light of his ongoing penchant for fraud and misappropriation of other person's identities, I also find that the Government has met its burden to show by clear and convincing evidence that there are no conditions that would reasonably assure the safety of the community if Garcia-Oquendo were to be released.

## IV.    CONCLUSION

In view of the forgoing, the Defendant's Motion for Release with Conditions is DENIED. An order of detention pending trial shall be entered.

**IT IS SO ORDERED**

In San Juan, Puerto Rico this 10th day of March, 2025.

<u>**s/Héctor L. Ramos-Vega**</u>
Héctor L. Ramos-Vega
United States Magistrate Judge

11